**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Patrick Lee PILLOW, Defendant–Appellant.**

**No. 98–4516.**

United States Court of Appeals, Fourth Circuit.

Argued: April 9, 1999

Decided: Sept. 7, 1999

404

**ARGUED:** Hunt Lee Charach, Federal Public Defender, Charleston, West Virginia, for Appellant. Miller Allison Bushong, III, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** George H. Lancaster, Jr., Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Rebecca A. Betts, United States Attorney, Charleston, West Virginia, for Appellee.

Before LUTTIG and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

WILLIAMS, Circuit Judge:

Patrick Lee Pillow was convicted of, among other things, conspiracy to possess with intent to distribute methamphetamine. *See* 21 U.S.C.A. § 846 (West Supp.1999). Although Pillow's guideline range was 188–235 months, *see U.S. Sentencing Guidelines Manual* Ch.5, Pt.A (1998), he was subject to a statutorily required minimum sentence of 240 months, *see* 21 U.S.C.A. § 851 (West 1981). Because the statutorily required minimum sentence was greater than the maximum of the otherwise applicable guideline range, the district court determined that Pillow's guideline sentence was also 240 months pursuant to U.S.S.G. § 5G1.1(b).

Based upon Pillow's subsequent substantial assistance in the indictment and conviction of a co-conspirator, the Government filed motions with the district court for downward departures from the statutorily required minimum sentence, *see* 18 U.S.C.A. § 3553(e) (West Supp.1999), and from the guideline sentence, *see* U.S.S.G. § 5K1.1. At Pillow's sentencing hearing, the district court granted the Government's dual departure motions, and, over Pillow's objection, used 240 months as the starting point for calculating the extent of both downward departures. Ultimately, the district court departed downward to 188 months imprisonment under both § 3553(e) and § 5K1.1.

On appeal, Pillow argues only that the district court erred in using 240 months as the starting point for calculating the downward departure pursuant to § 5K1.1. More specifically, Pillow contends that after the district court granted the § 3553(e) motion he was no longer subject to a statutorily required minimum sentence and, therefore, that § 5G1.1(b) no longer mandated a guideline sentence of 240 months. Instead, Pillow argues that the district court should have used 188 months, the low-end of the otherwise applicable guideline range, as the starting point for the § 5K1.1 departure from the guideline sentence.

We conclude that § 3553(e) allows for a departure from, not the removal of, a statutorily required minimum sentence. Thus, despite Pillow's contentions to the contrary, he remains subject to a statutorily required minimum sentence. Here, after departing downward pursuant to § 3553(e), the district court set the statutorily required minimum sentence at 188 months. Because the district court could not have departed below 188 months pursuant to § 5K1.1, we affirm.

I.

On September 13, 1997, Patrick Lee Pillow and his girlfriend, Summer Haw-

thorne, moved to Parkersburg, West Virginia from California. Prior to moving to West Virginia, Pillow had been buying methamphetamine from Thomas Jerecki and then selling it via Federal Express and United Parcel Service to Chris Cofer in West Virginia. After learning that methamphetamine sold for a much higher price in West Virginia than in California, Pillow decided to move his drug trafficking operation to West Virginia. Once in West Virginia, Pillow continued to purchase his supply of methamphetamine from Jerecki's California drug organization.

On September 17, 1997, Jason Chirimbes, the operator of Pack–n–Ship, a parcel mailing service located in El Cajon, California, contacted Special Agent Loucks of the DEA about a suspicious package that the company had received for mailing. The package was addressed to: Pat Systems, 718 Grand Central Avenue, # 161, Vienna, West Virginia 26105. Because of the discrepancies between the sender's name (*i.e.*, the shipping label identified the sender as Larry Hill while the preprinted label affixed to the package identified the sender as Gracie Roach), what the sender stated the package contained (*i.e.*, toys), what the package smelled like (*i.e.*, coffee), and the amount for which the package was insured (*i.e.*, $100), Chirimbes informed Special Agent Loucks that he had opened the package in accordance with Pack–n–Ship's business policy. Chirimbes advised Special Agent Loucks that the package contained what appeared to be drugs.

Shortly after receiving the information from Chirimbes, Special Agent Loucks obtained possession of the package from Pack–n–Ship. The DEA's subsequent investigation revealed that the package contained 2,264 grams of marijuana and 268.7 grams of methamphetamine. The methamphetamine was located within another box in the package that also contained coffee.[1] Special Agent Loucks contacted Special Agent Manchas in West Virginia, who agreed to arrange a controlled delivery of the package. The package was then sent to Special Agent Manchas, and a surveillance of the Mailrooms Plus facility located at 718 Grand Central Avenue was established.

On September 18, 1997, a red Ford Probe pulled into the parking lot at the Mailrooms Plus facility in question. Hawthorne exited the car, which was driven by Pillow, and entered the Mailrooms Plus facility, where Special Agent Manchas was working in an undercover capacity. Hawthorne asked Special Agent Manchas whether a package had been delivered to Box 161. Special Agent Manchas presented Hawthorne with the package that had been intercepted at the Pack–n–Ship in California. After taking possession of the package, Hawthorne exited the Mailrooms Plus facility and, along with Pillow, was immediately arrested and taken into custody.

Hawthorne agreed to cooperate in exchange for immunity. Among other things, Hawthorne testified before a federal grand jury about Pillow's involvement with Jerecki and his reason for moving to West Virginia. On October 7, 1997, Pillow was charged in a two-count indictment. Count One of the indictment charged Pillow with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C.A. § 846 (West Supp.1999). He was charged in Count Two of the indictment with possession with intent to distribute methamphetamine in violation of 21 U.S.C.A. § 841(a)(1) (West 1981) and 18 U.S.C.A. § 2 (West 1969). Despite several offers, Pillow declined to plead guilty. The day before his trial, the Government filed an information pursuant to 21 U.S.C.A. § 851 (West 1981), asserting that Pillow previously had been convicted of a felony drug offense and, therefore, was

---

**1.** Coffee is commonly used by drug traffickers to disguise the odor of illegal drugs from police dogs trained to alert to such substances. *See, e.g., United States v. Scales,* 903 F.2d 765, 767 n. 3 (10th Cir.1990).

subject to a statutorily required minimum sentence of 240 months if convicted.

Pillow's trial lasted two days. Although Pillow did not testify, Hawthorne and others testified against him. After deliberation, the jury convicted Pillow on both counts of the indictment. Shortly thereafter, and prior to sentencing, Pillow asked the Government if he could assist in its investigation of Jerecki.

It is undisputed that Pillow cooperated fully with the Government in the Jerecki investigation. In addition to providing the Government with critical information, Pillow testified before a federal grand jury. Indeed, Pillow's cooperation directly led to the indictment and conviction of Jerecki. Based upon his substantial assistance, the Government filed motions with the district court for downward departures from the statutorily required minimum sentence, *see* 18 U.S.C.A. § 3553(e) (West Supp.1999), and from the guideline sentence, *see U.S. Sentencing Guidelines Manual* § 5K1.1 (1998).

On June 2, 1998, Pillow was sentenced pursuant to the drug trafficking guideline. *See* U.S.S.G. § 2D1.1. Due to the amount of drugs involved, Pillow's base offense level was set at thirty-two. *See* U.S.S.G. § 2D1.1(c)(4). The district court also attributed twelve criminal history points to Pillow, placing him in Criminal History Category V. *See* U.S.S.G. Ch.5, Pt. A. With a total offense level of 32 and a criminal history category of V, Pillow's applicable guideline range was 188–235 months. *See id.* Prior to considering the Government's departure motions, however, the district court inquired of the Government as to whether, given Pillow's cooperation, it intended to withdraw the information it had filed pursuant to 21 U.S.C.A. § 851. The Government informed the district court that it would not withdraw the

information because Pillow refused to accept a plea agreement prior to the filing of the information. The Government noted that Pillow only cooperated with the Government after knowing that he had been convicted. As a result, the Government expressed its desire that the statutorily required minimum sentence of 240 months be the starting point for any sentencing reduction.

In accordance with the Government's request, the district court used 240 months as the starting point for calculating both the downward departure from the statutorily required minimum sentence pursuant to § 3553(e) and the downward departure from the guideline sentence pursuant to § 5K1.1. Pillow objected on the ground that the starting point for the § 5K1.1 downward departure should have been the guideline sentence, which Pillow contended was 188 months, the low-end of the guideline range, not the statutorily required minimum sentence of 240 months. The district court reluctantly disagreed, noting that because the statutorily required minimum sentence was greater than the high-end of Pillow's otherwise applicable guideline range, the guideline sentence was also 240 months pursuant to U.S.S.G. § 5G1.1(b).[2] After overruling Pillow's objection, the district court then departed downward to 188 months imprisonment under both § 3553(e) and § 5K1.1. Pillow filed a timely notice of appeal, raising only the issue of whether the district court properly used 240 months as the starting point for calculating the downward departure pursuant to § 5K1.1.

## II.

On appeal, Pillow contends that the district court erred in applying § 5G1.1(b). To give due deference to a district court's application of the Sentencing Guidelines,

---

**2.** The district court stated that it would have departed below the guideline sentence to a sentence of 140 months had the starting point for the § 5K1.1 departure been, as Pillow contended, within the otherwise applicable guideline range. Notwithstanding that statement, the district court also stated that it could not justifiably depart below the statutorily required minimum sentence to a sentence of less than 188 months.

this court reviews factual determinations for clear error, *see United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir. 1989), and legal questions de novo, *see United States v. Castner*, 50 F.3d 1267, 1274 (4th Cir.1995). Whether the district court erred in applying § 5G1.1(b) is a legal question subject to de novo review.

■ Section 5G1.1 provides, in pertinent part, as follows:

> Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.

U.S.S.G. § 5G1.1(b). On appeal, Pillow argues only that because the district court granted the Government's motion under § 3553(e), he was no longer subject to a statutorily required minimum sentence. Accordingly, Pillow contends that § 5G1.1(b) no longer mandated a guideline sentence of 240 months. Instead, Pillow argues that the § 3553(e) motion restored the otherwise applicable guideline range that would have applied absent the mandatory minimum sentence. We disagree.

Section 3553 provides a district court with the authority to depart below a statutorily required minimum sentence as follows:

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as [a] minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C.A. § 3553(e) (West Supp.1999). As the plain language of the statute makes clear, § 3553(e) allows for a departure from, not the removal of, a statutorily required minimum sentence. *See Melendez v. United States*, 518 U.S. 120, 128, 116

S.Ct. 2057, 135 L.Ed.2d 427 (1996) (describing § 3553(e) motion as a departure). That the resulting "sentence" must be imposed in accordance with the Sentencing Guidelines and policy statements does not mean, as Pillow contends, that the resulting sentence becomes the guideline sentence and, therefore, the starting point for the § 5K1.1 departure. Rather, the phrase simply means that the district court's discretion in choosing a sentence after the Government moves to depart below the statutorily required minimum sentence is constrained by the Sentencing Guidelines and policy statements. Specifically, the district court should use the factors listed in § 5K1.1(a)(1)-(5) as its guide when it selects a sentence below the statutorily required minimum sentence. *See Melendez*, 518 U.S. at 129 & n. 10, 116 S.Ct. 2057 (noting that the Application Notes to the Sentencing Guidelines suggest that a district court should consider the § 5K1.1(a) factors in determining the extent of a departure below the statutorily required minimum sentence). Thus, while Pillow's statutorily required minimum sentence was lowered to 188 months, it was not eliminated. Accordingly, despite Pillow's contentions to the contrary, he remains subject to a statutorily required minimum sentence.

As support for his argument that he is no longer subject to a statutorily required minimum sentence, Pillow erroneously relies on the only other mechanism for obtaining relief from a statutorily required minimum sentence, the "safety valve." *See* 18 U.S.C.A. § 3553(f) (West Supp.1999); *see also* U.S.S.G. § 5C1.2 (listing safety valve criteria). Although a criminal defendant who satisfies the criteria in § 3553(f)(1)-(5) is no longer subject to an otherwise applicable statutorily required minimum sentence, that fact is of no help to Pillow. First, Pillow was sentenced pursuant to § 3553(e) (substantial assistance), not § 3553(f) (safety valve). Second, Pillow, because of his prior drug related convictions, is not eligible for sentencing under the safety valve in any

event. *See* 18 U.S.C.A. § 3553(f)(1) (providing that a defendant with more than one criminal history point is not eligible for relief under the safety valve). Finally, and most telling, while § 3553(e) provides for a sentence "below" a statutorily required minimum sentence, *i.e.*, a departure, § 3553(f) provides for a sentence "without regard" to any statutorily required minimum sentence. Thus, unlike § 3553(e), under which Pillow was sentenced, the plain language of § 3553(f) specifically provides that a defendant who meets the requisite' criteria is exempt from any statutorily required minimum sentence.

### III.

In conclusion, we reject Pillow's sole argument for why the district court erred in applying § 5G1.1(b) because his argument is based upon the mistaken belief that the district court's grant of the Government's § 3553(e) motion eliminated the statutorily required minimum sentence. Accordingly, Pillow's sentence is affirmed.

*AFFIRMED*

BUTZNER, Senior Circuit Judge, dissenting:

I respectfully dissent. The district court granted the prosecutor's motion to depart from the statutory minimum sentence pursuant to 18 U.S.C. § 3553(e). J.A. 45. The prosecutor erred by insisting that the starting point for departure was the statutory minimum sentence of 240 months. Section 3553(e) does not require that the point of departure be the statutory minimum sentence. Section 3553(e) accomplishes three objectives. First, it authorizes a court, upon motion by the government, to depart below "a level established by statute as a minimum sentence." Second, it refers the court to the Sentencing Commission's "guidelines and policy statements" for an appropriate sentence. And third, the sentence must be imposed in accordance with 28 U.S.C. § 994.

Section 994 directs the Commission to promulgate and distribute "guidelines, as described in this section, for use of a sentencing court in determining the sentence to be imposed in a criminal case...." Pillow's guideline sentence was correctly determined to be 188 to 235 months in accordance with the Commission's "guidelines and policy statements."

Section 994(n) specifically provides:

The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

United States Sentencing Guideline § 5K1.1 provides in part: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." The court also granted the prosecutor's motion which he made pursuant to this section. J.A. 44–45. The low end of the guideline sentence was 188 months. Therefore, the district court should have departed from 188 months—that is, "from the guidelines"—in order to comply with the mandatory provisions of § 5K1.1.

The court stated: "I had contemplated a reduction from 188 months to 140 months as a three-point reduction, but since we do have the mandatory minimum of 240 months and that must be my beginning point, I cannot go to a sentence as low as I had contemplated." My analysis would have enabled the district court to achieve a sentence of 140 months. This position is also consistent with, and supported by, USSG § 2D1.1, comment. (n.7):

Where a mandatory (statutory) minimum sentence applies, this mandatory minimum sentence may be "waived" and

a lower sentence imposed (including a sentence below the applicable guideline range), as provided in 28 U.S.C. § 994(n), by reason of a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense." *See* § 5K1.1 (Substantial Assistance to Authorities).

Although the prosecutor moved for departure under both 18 U.S.C. § 3553(e) and USSG § 5K1.1, he treats the two departures as a unitary system of departure. In truth, they are not unitary; instead they are separate departures, each with its own terms and function. *Melendez v. United States,* 518 U.S. 120, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996).

Other difficulties with the prosecutor's position are readily apparent. The prosecutor relies on USSG § 5G1.1 which applies to sentencing on a single count of conviction. Pillow was convicted on two counts. The correct sentencing procedure is § 5G1.2, *Sentencing on Multiple Counts of Conviction.* Even if § 5G1.1(a) and (b) are incorporated into § 5G1.2 by § 5G1.2(b), the statutory minimum sentence is not "required by law" because the district court has departed from the statutory minimum sentence, and it is no longer in existence.

Because I would remand for resentencing, I respectfully dissent.