PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 00-4012

CORNELIUS DOUGLAS STUDIFIN,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-99-190)

Argued: December 4, 2000

Decided: February 16, 2001

Before NIEMEYER, WILLIAMS, and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Niemeyer and Judge Traxler joined.

_____

COUNSEL

ARGUED: Lisa Kim Lawrence, LAWRENCE & ASSOCIATES,
Richmond, Virginia, for Appellant. James Brien Comey, Jr., Assistant
United States Attorney, Richmond, Virginia, for Appellee. ON
BRIEF: D. Scott Gordon, LAWRENCE & ASSOCIATES, Rich-
mond, Virginia, for Appellant. Helen F. Fahey, United States Attor-
ney, Stephen W. Miller, Assistant United States Attorney, Richmond,
Virginia, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Cornelius Studifin was convicted in the United States District Court for the Eastern District of Virginia of interfering with interstate commerce by robbery in violation of 18 U.S.C.A.§ 1951(a) (the Hobbs Act) (Count I); using a firearm in furtherance of a crime of violence in violation of 18 U.S.C.A. § 924(c) (Count II); and possession of a firearm by a convicted felon in violation of 18 U.S.C.A. § 922(g)(1) (Count III). The district court sentenced Studifin to two 180-month concurrent terms, along with a mandatory minimum 84-month term to be served consecutively to his other sentences for his violation of § 924(c). On appeal, we initially address a sentencing issue of first impression in this Circuit -- Studifin's argument that his sentence violates the Double Jeopardy Clause because the 1998 amendments to § 924(c) preclude consecutive terms of imprisonment whenever another provision of law carries a greater mandatory minimum sentence than that imposed under § 924(c). We also address Studifin's other double jeopardy claims, as well as Studifin's challenges to the sufficiency of the evidence supporting his convictions. Finding no error, we affirm.

I.

On March 28, 1999, a black male wearing a burgundy and gold Washington Redskins cap and a black Oakland Raiders jacket robbed the Community Pride grocery store in Richmond, Virginia. The robber, whose face was masked by a dark stocking, placed a black bag with a cigarette logo and a silver firearm on the counter and demanded money from the clerk. The robber took approximately $200.

Shortly after the robbery, Officer Michael Tunstall noticed a black male wearing a burgundy and gold Redskins cap and a black Raiders jacket who was carrying a black bag in his hands and running through the Community Pride parking lot. Tunstall followed him. After losing sight of him for a few moments, Tunstall caught up to the man as he stood near a section of bushes. As Tunstall asked the man for identification, the radio dispatch reported the robbery, including a description

2

of the robber and the fact that the robber was armed with a silver handgun. Upon hearing the description of the robber, Tunstall arrested the man, who was later identified as Studifin. Tunstall inspected the area of bushes where Studifin had been standing and found a blue nylon stocking, $196 in cash, and a black bag with a cigarette logo. Tunstall and another officer then searched for the firearm and recovered a silver Rohm .22 caliber gun approximately fifteen to twenty-five yards from the area in which Tunstall first confronted Studifin. After the arrest, Detective Clyde Fisher questioned Studifin, who waived his <u>Miranda</u> rights, admitted using the firearm, and described the robbery.

The jury convicted Studifin on all counts and the district court sentenced him to two 180-month concurrent terms for Counts I and III. The district court also sentenced Studifin to the mandatory minimum 84 months for Count II, to be served consecutively with the other sentences. Studifin also received a three-year-term of supervised release for each conviction.

Studifin challenges his sentence and convictions on appeal. First, Studifin argues that his sentence constitutes double jeopardy because § 924(c) and § 924(e) punish the same conduct and because the 1998 amendments to § 924(c) prohibit the imposition of a mandatory consecutive sentence pursuant to § 924(c) where the mandatory minimum sentence from another provision of law is greater than the mandatory minimum consecutive sentence under § 924(c). Second, Studifin challenges his convictions on sufficiency of the evidence grounds. We address each issue in turn.

II.

We first address whether Studifin's sentence violates the Double Jeopardy Clause. Where the issue is solely that of multiple punishment, as opposed to multiple prosecutions, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." <u>United States v. Luskin</u>, 926 F.2d 372, 377 (4th Cir. 1991) (internal quotation marks omitted); <u>see also United States v. Johnson</u>, 32 F.3d 82, 84 (4th Cir. 1994) ("<u>B. Johnson</u>") ("Although the bar on double jeopardy restrains the executive and judicial branches, it leaves the legislature basically

3

untouched."). In <u>United States v. Johnson</u>, 219 F.3d 349 (4th Cir.) ("<u>S. Johnson</u>"), <u>cert. denied</u>, 121 S. Ct. 593 (2000), we described the test for Double Jeopardy in the context of multiple punishments for the same conduct: "The same conduct can support convictions and sentencing under two different federal statutes as long as each statute requires proof of an element that the other does not." <u>Id.</u> at 358. "If the elements of the two statutes do not necessarily overlap, then multiple punishments are presumed to be authorized absent a clear showing of contrary Congressional intent." <u>S. Johnson</u>, 219 F.3d at 359 (internal quotation marks omitted). We review questions of double jeopardy de novo. <u>See United States v. Brown</u>, 202 F.3d 691, 703 (4th Cir. 2000).

A.

Studifin argues that the imposition of a mandatory minimum consecutive sentence pursuant to § 924(c) constitutes double jeopardy because § 924(c) and § 924(e) punish essentially the same conduct, possession of a firearm during a robbery.[1] We disagree. It is clear that

_____

[1] Section 924(e), often called the Armed Career Criminal statute, provides for a mandatory minimum fifteen-year sentence for a "person who violates section 922(g) . . . and has three previous convictions" for violent felonies or serious drug offenses. 18 U.S.C.A.§ 924(e) (West 2000). Section 924(e) provides that

> [i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C.A. § 924(e).

Section 924(c), by contrast, requires a mandatory minimum consecutive sentence of five years or more for persons who use a firearm "in relation to any crime of violence or drug trafficking crime." 18 U.S.C.A. § 924(c) (West 2000). Section 924(c) provides in pertinent part:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provi-

4

§ 924(c) and § 922(g) each requires proof of an element that the other does not. Section 922(g)(1) requires proof (1) that the defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) that the possession of the firearm was in or affecting interstate commerce because the firearm had traveled in interstate or foreign commerce at some point during its existence.[2] See United States v. Langley, 62

_____

> sion of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C.A. § 924(c).

[2] We compare the elements of § 922(g) to the elements of § 924(c) because the elements of § 922(g) are subsumed within § 924(e). See 18 U.S.C.A. § 924(e) (West 2000) (stating that a violation of § 922(g) triggers § 924(e) where the "person who violates section 922(g) . . . has three previous convictions" for violent felonies or serious drug offenses). Section 922(g) provides that

> It shall be unlawful for any person--
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922(g) (West 2000).

5

F.3d 602, 606 (4th Cir. 1995) (stating elements of § 922(g)). Section 924(c), by contrast, requires proof (1) that the defendant actively used or carried a firearm; (2) during and in relation to his commission of a crime of violence or drug trafficking crime. See United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997) (stating elements of § 924(c)). Thus, violation of § 922(g) requires proof of an element that § 924(c) does not, i.e., that the defendant was a previously convicted felon; and violation of § 924(c) requires proof of an element that § 922(g) does not, i.e., active use or carrying of a firearm. "Therefore, each statutory provision includes an element that the other does not, and multiple punishments are presumed." S. Johnson, 219 F.3d at 359; United States v. Garrett, 903 F.2d 1105, 1114-15 (7th Cir. 1990) (rejecting argument that because "sections 922(g) and 924(c) constitute multiple punishments for the same criminal conduct-- possession of a firearm," consecutive sentences imposed for convictions under both 18 U.S.C.A. §§ 922(g) and 924(c) violate the Double Jeopardy clause); cf. United States v. Presley, 52 F.3d 64, 68 (4th Cir. 1995) (stating that the Armed Career Criminal Act "does not violate the Double Jeopardy Clause").

B.

Studifin next argues that his sentence constitutes improper double counting under the Guidelines because the district court both enhanced his offense level under the Armed Career Criminal guideline, United States Sentencing Commission, Guidelines Manual, § 4B1.4 (Nov. 1998), and also imposed the statutory mandatory minimum under § 924(c). Such double counting, however, is not per se improper. See United States v. Crawford, 18 F.3d 1173, 1179-80 (4th Cir. 1994) (stating that "triple counting" the same conduct under the Guidelines "will be upheld unless it is expressly prohibited by the guidelines" because "the guidelines should be applied as written" (internal quotation marks omitted)); United States v. Sanders, 982 F.2d 4, 6-7 (1st Cir. 1992) (finding no impermissible double counting where Sanders was convicted under § 922(g) and § 924(c) and also received an enhancement under U.S.S.G. § 4B1.4 as an armed career criminal); see also 18 U.S.C.A. § 924(c)(1)(A) (providing that the mandatory minimum sentence should apply even where the underlying crime already "provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device"); cf. B. John-

6

<u>son</u>, 32 F.3d at 86 ("[T]he penalty provision of § 924(c)(1) states that the term of incarceration shall be `in addition to the punishment provided for such crime of violence.' This penalty provision further supports our view that Congress was well aware of the cumulative sentencing effect of § 924(c)(1).").

Studifin points to U.S.S.G. § 2K2.4, which provides that "[t]o avoid double counting, when a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for explosive or firearm discharge, use, or possession is not applied in respect to such underlying offense." USSG § 2K2.4, comment. (backg'd). We note, however, that § 2K2.4's admonitions were considered in calculating Studifin's sentence. The presentence report indicates that Studifin's underlying robbery sentence was calculated at a base offense level of 20, without the otherwise applicable increase of 4 levels under § 2B3.1 for the specific offense characteristic of firearm use. (<u>See</u> J.A. at 167.) The district court used the presentence report's recommended base level to calculate Studifin's sentence for Count I. (J.A. at 132 ("I find that the defendant's base offense level for count one is 20 .. . .").)**3** Thus, the district court did not violate § 2K2.4's prohibition against double counting because it did not consider Studifin's firearm use in calculating the offense level for his robbery offense. <u>See Sanders</u>, 982 F.2d at 7 (recognizing that "[h]ad defendant been separately charged with the underlying drug offense, the application note would have directed that defendant's use of a weapon not be considered in calculating the offense level <u>for the drug offense</u>" but rejecting the argument that the district court impermissibly double counted by "first raising his offense level on the felon in possession count from 33 to 34 [pursuant to § 4B1.4 as an Armed Career Criminal] and in then adding a minimum five-year sentence to the felon in possession sentence [pursuant to § 924(c)]" (emphasis added)). In other words, the district court did not improperly double count when calculating Studifin's sentence.

_____

**3** The presentence worksheet for Studifin's § 922(g) conviction also explicitly recognizes that § 2K2.4 "prohibits the application of specific offense characteristics applicable to the use of firearms in the underlying offense of robbery." (J.A. at 169.)

C.

Finally, Studifin argues that there is a "clear showing of contrary Congressional intent" that defeats the presumption that multiple punishments are authorized. See S. Johnson, 219 F.3d at 359 ("If the elements of the two statutes do not necessarily overlap, then multiple punishments are presumed to be authorized absent a clear showing of contrary Congressional intent." (internal quotation marks omitted)). This brings us to an issue of first impression in this Circuit: Do the 1998 amendments to § 924(c) "unambiguously evidence[ ] a legislative intent to avoid duplicative sentences where other provisions of law satisfy the objectives of § 924(c) by imposing a mandatory sentence [on] such conduct that is greater than the § 924(c) enhancement?" (Appellant's Br. at 18-19.)

In Bailey v. United States, 516 U.S. 137 (1995), the Supreme Court addressed the issue of how much the Government must show, beyond mere possession, in order to establish "use" of the firearm for purposes of § 924(c). The Bailey Court rejected the Government's broader interpretation of the statute and concluded that "use" required active employment of the firearm. See id. at 150. Accordingly, in 1998, Congress amended § 924(c) "to provide for increased mandatory minimum sentences for criminals possessing firearms and for other purposes," H.R. Rep. 105-344, because it"was convinced the Bailey decision was a setback for law enforcement and crime control." Paul J. Hofer, Federal Sentencing for Violent and Drug Trafficking Crimes Involving Firearms: Recent Changes and Prospects for Improvement, 37 Am. Crim. Law R. 41, 65 (2000); cf. United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir. 2000) (noting that, in the wake of Bailey, "Congress sought to broaden the statute"), cert. denied, 121 S. Ct. 839 (2001). Prior to 1998, § 924(c) provided that

> "Whoever, during and in relation to any crime of violence . . . (including a crime of violence . . . which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon . . .) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime

8

of violence . . . be sentenced to imprisonment for five years . . . ."

B. Johnson, 32 F.3d at 85 (quoting 18 U.S.C.§ 924(c)(1) (West Supp. 1993)). Under that version of the statute, "[t]he five-year penalty must run consecutively to any sentence imposed on the crime of violence and is without parole." B. Johnson, 32 F.3d at 84. The current version of § 924(c) provides, in pertinent part:

> (c)(1)(A) <u>Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law</u>, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C.A. § 924(c) (West 2000) (emphasis added).

Studifin argues that the "[e]xcept to the extent" language in amended § 924(c) prohibits the court from imposing § 924(c)'s mandatory minimum consecutive sentence where the defendant is subject to a higher mandatory minimum sentence pursuant to another provision of law.[4] The Eighth Circuit recently spoke on this issue in <u>United</u>

_____
[4] Studifin's mandatory minimum consecutive sentence under § 924(c) is seven years. <u>See</u> 18 U.S.C.A. § 924(c)(1)(A)(ii) (West 2000). Studifin

9

<u>States v. Alaniz</u>, No. 00-1539, 2000 WL 1839321 (8th Cir. Dec. 15, 2000).**5**

_____

argues that because he also was subject to a fifteen-year mandatory minimum sentence under § 924(e) as an Armed Career Criminal, he was "sentenced to a mandatory [minimum] sentence for his firearm possession that was greater than the mandatory minimum sentence imposed by § 924(c)(1)(A)," and, thus, "the mandatory [consecutive] sentence of § 924(c)(1)(A) should not be invoked." (Appellant's Br. at 21.)

**5** The only other decision that we have found that addresses this issue is an unpublished district court opinion, <u>United States v. Baldwin</u>, No. 1:99-CR-127-01, 1999 WL 1566472 (W.D. Mich. 1999). In <u>Baldwin</u>, the district court rejected a similar argument, stating that "[t]he Court rejects Defendant's interpretation of the statute because it is contrary to the plain language used by Congress and the well-established purpose of providing an enhanced sentence for crimes of violence involving the use of firearms." <u>Id.</u> at *1. Looking to the language of the statute as a whole, the court stated that

> Defendant's argument focuses solely upon the introductory language of § 924(c) added by the 1998 amendment. While the argument may be plausible when considered only in light of the first twenty words of § 924(c)(1)(A), the argument fails when considered in light of Congress' intent, as demonstrated by § 924(c)(1)(D)(ii), that persons who use or carry firearms during the course of a crime of violence or a drug trafficking crime be subject to enhanced penalties under § 924(c) through consecutive sentences. <u>Defendant's interpretation of § 924(c) would effectively nullify Congress' intent to impose consecutive sentences by requiring a defendant to be sentenced under either§ 924(c) or the underlying crime of violence or drug trafficking, but not both</u>.

<u>Id.</u> at *2 (emphasis added). The court concluded that

> the text of the amendment shows that Congress intended to broaden, rather than restrict, the reach of the statute. Consistent with the established purpose of § 924(c), the Court concludes that the introductory phrase, "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or any other provision of law," was intended to allow only for more severe punishment where another statute provides for greater consecutive sentencing.

<u>Id.</u> (internal citations omitted).

10

In <u>Alaniz</u>, the Eighth Circuit reversed the district court's interpretation of the "greater minimum sentence" language in § 924(c) as "referring to any greater minimum sentence, including one for the predicate drug crime," instead concluding that"[t]he amendment refers only to a `greater minimum sentence' for the various types of firearm-related conduct proscribed in § 924(c)(1)." <u>Id.</u> at *1. The <u>Alaniz</u> court first noted that the "except to the extent" language "doesn't alter the original statute's clear object of enhancing sentences for predicate drug crimes or crimes of violence with consecutive firearm sentences. Rather, Congress added the new phrase because the statute's organizational structure changed." <u>Id.</u> at *3. The <u>Alaniz</u> court stated that "[p]rior to the 1998 amendment, all possible sentence lengths for the different types of firearm-related conduct proscribed by the statute were found within an undivided subsection. Likewise, all of the various sentence lengths for second or subsequent convictions were contained within the same undivided subsection." <u>Id.</u> However,

> [a]fter the 1998 amendment, the various sentence lengths in the statute are no longer set forth within an undivided subsection. The amendment preserves all of the old possible sentence lengths, while adding two new gradations-- not less than seven years for brandishing a firearm, and not less than ten years for discharging a firearm -- further refining the types of firearm-related conduct proscribed by the statute. Because of this increase in sentencing possibilities, Congress divided what was already a lengthy subsection into distinct subdivisions.

> Subdivision (c)(1)(A) contains the statute's prefatory language, the basic five-year sentence applicable to most firearms, and the new sentences for brandishing or discharging. Subdivision (c)(1)(B) now covers the sentence for short-barreled rifles or shotguns and semiautomatic assault weapons, plus the sentence for machineguns or silencers. Subdivision (c)(1)(C) enumerates the possible sentences for second or subsequent convictions.

<u>Id.</u> The <u>Alaniz</u> court found that"[c]omparing the old and new versions of § 924(c)(1), it's apparent that Congress added the phrase `[e]xcept

11

to the extent that a greater minimum sentence is otherwise provided by this subsection' to link the remaining prefatory language in (c)(1)(A) to each sentence length set forth in subdivisions (c)(1)(B) and (c)(1)(C). Absent that linking phrase, the self-standing provisions in (c)(1)(B) and (c)(1)(C) are grammatically and conceptually incomplete." Id. The Alaniz court therefore concluded that

> we find no support for the proposition (advanced by the district court) that subdivision (c)(1)(A)'s "greater minimum sentence" clause applies to the predicate drug trafficking crime or crime of violence of which a particular defendant has been convicted. <u>Subdivision (c)(1)(A)'s"greater minimum sentence" clause refers only to the firearm-related conduct proscribed either by § 924(c)(1) or"by any other provision of law."</u> The ten-year mandatory minimum drug sentence at 21 U.S.C. § 841(b)(1)(A) does not govern firearm-related conduct, and therefore does not fall within subdivision (c)(1)(A)'s reference to "any other provision of law."

Id. (emphasis added).

We agree with the Alaniz court that in light of the structure and language of § 924(c)(1), it is clear that the"except to the extent" language is designed to "link the remaining prefatory language in (c)(1)(A) to" the other subdivisions. Alaniz , 2000 WL 1839321, at *3. We also believe that the "any other provision of law" language provides a safety valve that would preserve the applicability of any other provisions that could impose an even greater mandatory minimum consecutive sentence for a violation of § 924(c). In other words, we read this language as simply reserving the possibility that another statute or provision might impose a greater minimum consecutive sentencing scheme for a § 924(c) violation, and not as negating the possibility of consecutive sentencing in the circumstances of the present case.

Indeed, in concluding that the 1998 amendments were not intended to narrow the scope of § 924(c)'s mandatory consecutive sentencing scheme, we note that Studifin's reading of § 924(c) would, in effect, negate the imposition of mandatory consecutive sentences for more

12

serious offenders who qualify as Armed Career Criminals,[6] but not for less serious offenders who have committed fewer prior serious felonies.[7] This construction of § 924(c) simply makes no sense in light of Congress's clear intent in § 924(c) to impose mandatory consecutive sentences, as opposed to choosing between one or the other sentence, and indeed would be patently inconsistent with the intent expressed in § 924(c)(1)(D)(ii) to require mandatory consecutive sentences against those who commit crimes of violence while using or carrying firearms in furtherance of their crimes.[8] Examining the statute as a whole, par-

---

[6] Under Studifin's reading of § 924(c), an Armed Career Criminal would still be subject to mandatory consecutive sentencing if he used a machinegun or destructive device, used a silencer, or if he had previously violated § 924(c). 18 U.S.C.A. § 924(c)(1)(B)(ii) & (C) (West 2000) (imposing mandatory minimum consecutive sentences ranging from twenty-five years to life).

[7] The implausibility of Studifin's broad reading of § 924(c) was similarly noted by the Alaniz court in the context of whether the "except to the extent" language applied where Alaniz was subject to a greater mandatory minimum sentence for the underlying predicate offense than for his violation of § 924(c):

> The district court's interpretation, which deems the amendment's mention of a "greater minimum sentence" to refer to a sentence for the predicate crime, fails to give the statute a sensible construction. That construction would punish those guilty of severe offenses more leniently, and those guilty of less severe offenses more stringently, an illogical result. The most serious drug crimes and crimes of violence (those already carrying mandatory minimum sentences) would not be enhanced by a consecutive firearm sentence despite the fact that a gun was involved. Meanwhile, less serious crimes (to which no minimum mandatory sentences apply) would be enhanced by a consecutive firearm sentence when committed with a gun.

United States v. Alaniz, No. 00-1539, 2000 WL 1839321, at *3-4 (8th Cir. Dec. 15, 2000).

[8] Section 924(c)(1)(D)(ii) provides:

> (D) Notwithstanding any other provision of law --
>
> . . . .
>
> (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprison-

13

ticularly in light of the language of § 924(c) and the purpose behind the 1998 amendments, we do not believe that Congress intended to narrow § 924(c) by eliminating mandatory consecutive sentences where another provision imposes a higher mandatory minimum sentence for conduct other than that described in § 924(c). For these reasons, we reject Studifin's interpretation of § 924(c) and conclude that Studifin's sentence does not constitute double jeopardy.[9]

III.

We next address Studifin's challenges to his convictions on sufficiency of the evidence grounds. Studifin argues that the district court should have granted his motion for judgment of acquittal as to Count I because the evidence was insufficient to establish that he possessed a Rohm .22 pistol in violation of § 922(g)(1). Studifin also argues that the evidence was insufficient to identify him as the robber for purposes of Counts I and II. We review a challenge to the sufficiency of the evidence to determine "`if there is substantial evidence, taking the

_____

> ment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C.A. § 924(c)(1)(D)(ii) (West 2000).

[9] Studifin also argues that at sentencing, the district court erred in failing to depart from the statutory mandatory minimum consecutive 84-month sentence of § 924(c) because it mistakenly believed that it lacked the discretion to do so. Studifin recognizes, however, that "[g]enerally, a sentencing court may not depart below required mandatory minimum sentences unless the government moves for such a departure based on substantial assistance." (Appellant's Br. at 16.); see 18 U.S.C.A. § 3553(e) (West 2000) (granting the district court limited authority to depart from the statutory mandatory minimum sentence where the government makes a motion based upon substantial assistance); cf. United States v. Pillow, 191 F.3d 403, 407 (4th Cir. 1999) (recognizing that § 3553(e) permits departure from the statutory mandatory minimum sentence based upon substantial assistance). Studifin's argument is not based upon substantial assistance, but rather upon the idea that § 924(c)'s statutory mandatory minimum consecutive sentence no longer applies to him because of the 1998 amendments. In light of our rejection of Studifin's reading of § 924(c), we find no merit to Studifin's argument.

14

view most favorable to the Government, to support'" the criminal conviction. <u>United States v. Mitchell</u>, 209 F.3d 319, 324 (4th Cir.) (quoting <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942)), <u>cert. denied</u>, 121 S. Ct. 123 (2000). "In reviewing the sufficiency of the evidence, we are not entitled to weigh the evidence or to assess the credibility of witnesses, but must assume that the jury resolved all contradictions . . . in favor of the Government." <u>United States v. Romer</u>, 148 F.3d 359, 364 (4th Cir. 1998) (internal quotation marks omitted), <u>cert. denied</u> 525 U.S. 1141 (1999).

A conviction under § 922(g)(1) requires evidence (1) that the defendant was a convicted felon at the time of the offense; (2) that he voluntarily and intentionally possessed the firearm; and (3) that the firearm traveled in interstate commerce at some point in time. <u>See United States v. Hobbs</u>, 136 F.3d 384, 390 (4th Cir. 1998); 18 U.S.C.A. § 922(g) (West 2000). Studifin's basic argument is that although the jury heard evidence that the silver firearm that the officers found in the field had traveled in interstate commerce, the jury did not hear sufficient evidence to establish that the silver firearm belonged to Studifin. Studifin argues that the firearm the officers found was located fifteen to twenty-five feet away from Studifin, that no fingerprints tied the weapon to Studifin, and that Officer Tunstall had watched Studifin closely and yet had not seen Studifin with the firearm. Studifin also argues that although Detective Fischer testified that Studifin confessed to carrying the gun, Fischer's testimony was uncorroborated and did not include a specific reference to the gun found in the field. Studifin also asserts that although the cashier testified that she saw a silver gun, she could not describe the gun with any specificity beyond its color.

The jury had ample evidence from which to convict Studifin on this count. Indeed, the evidence, which sets forth a clear chain of events linking Studifin with the firearm, clearly supports the conclusion that Studifin possessed the weapon found in the field. For example, the cashier told the police that the robber's face was masked with a dark stocking, that he wore a black Raider's jacket, burgundy and gold Redskin's hat, and had a silver handgun and a bag with a cigarette logo on it, and the police dispatcher radioed this description to the police on patrol. Tunstall saw Studifin, who matched this description, running across the Community Pride parking lot shortly after the robbery. The police found the silver handgun nearby, as well as a blue

15

nylon stocking, approximately $200 in cash, and a bag with a cigarette logo on it. These items were found in the area where Tunstall saw Studifin standing before Tunstall caught up to him. (J.A. at 71-74.) Moreover, Fisher testified that Studifin confessed to the robbery and to possessing the firearm. According to Fisher, Studifin explained that he threw the gun to a different place than the money because he "was trying for it not be found" and he "didn't want the gun charge." (J.A. at 93.) Although Studifin challenges the credibility of Fisher's testimony, "we are not entitled to weigh the evidence or to assess the credibility of witnesses, but must assume that the jury resolved all contradictions . . . in favor of the Government." Romer, 148 F.3d at 364 (internal quotation marks omitted). On this record, we have no difficulty concluding that there was sufficient evidence to support Studifin's conviction.

Likewise, sufficient evidence supports Studifin's convictions on Counts I and III. Studifin argues that there was insufficient evidence to show that Studifin was the perpetrator of the crime for purposes of Counts I and III. He asserts that the cashier could not identify Studifin as the robber because the robber wore a mask, the surveillance camera did not show the robber at the counter, and the money was not actually found on Studifin, but instead was found nearby. As noted above, however, not only did Fisher testify that Studifin confessed to the robbery, but the evidence also established a chain of events that links Studifin to the robbery. We find no merit to Studifin's arguments, which boil down to an attack upon Fischer's credibility and the circumstantial nature of the remaining evidence. See Romer, 148 F.3d at 364 (stating that credibility determinations and weighing of the evidence are for the jury). We therefore affirm Studifin's convictions.

IV.

In conclusion, Studifin's sentence does not constitute double jeopardy and, contrary to Studifin's arguments, the 1998 amendments to § 924 do not narrow the scope of § 924(c)'s mandatory consecutive sentencing scheme by eliminating mandatory minimum consecutive sentences for Armed Career Criminals. In addition, Studifin's convictions on all counts were supported by sufficient evidence. We therefore affirm Studifin's convictions and sentence.

AFFIRMED

16