**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-4529**

---

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

     v.

YVONNE L. ROBERTSON,

              Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Raymond A. Jackson, District Judge. (4:10-cr-00027-RAJ-FBS-1)

---

Argued: December 6, 2012        Decided: March 11, 2013

---

Before SHEDD, DIAZ, and THACKER, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Gregory Bruce English, THE ENGLISH LAW FIRM, PLLC, Alexandria, Virginia, for Appellant. Brian James Samuels, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Alexandria, Virginia; John Nobrega, Third Year Law Student, WILLIAM AND MARY SCHOOL OF LAW, Williamsburg, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Yvonne L. Robertson challenges the sufficiency of the evidence to support her convictions of three counts of money laundering, violations of 18 U.S.C. §§ 1957 and 1952, and one count of making a false statement to a law enforcement officer, a violation of 18 U.S.C. § 1001. Robertson argues that her money laundering convictions must be reversed under United States v. Santos, 553 U.S. 507 (2008), and that the district court therefore erred in rejecting her motion for acquittal on that ground. In addition, Robertson contends that the evidence presented in support of the false statement charge failed to exclude the reasonable possibility of mistake. We affirm in part, reverse in part and remand.

I.

A.

From 2006 to 2008, Robertson operated a real estate investment company known as Angel's Touch Real Estate Investments, LLC ("Angel's Touch").[1] Robertson used the company to orchestrate a mortgage fraud scheme involving the purchase and sale of residential properties in the Tidewater Area of

---

[1] We recite the facts in the light most favorable to the government, as the prevailing party at trial. See United States v. Jefferson, 674 F.3d 332, 341 n.14 (4th Cir. 2012).

Virginia. Robertson recruited straw buyers with good credit scores to apply for and obtain mortgage loans through the submission of loan applications and other documents bearing false information. In return for their participation, Robertson made side agreements with the buyers that were not disclosed to the lenders, promising to give the straw buyers cash, to repay the mortgages herself, or to find renters for the properties. Robertson also arranged transactions so that she or Angel's Touch would receive money at settlement in return for promises to make repairs and upgrades to the properties.

Ultimately, Robertson refused to provide promised funds to the straw buyers and failed to find promised renters or make promised mortgage payments. And neither Robertson nor Angel's Touch performed the promised repairs and upgrades. Invariably, the net result of the scheme was foreclosure and the financial ruin of the straw buyers.

B.

1.

A federal grand jury charged Robertson in a sixteen-count superseding indictment with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (count 1); mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (counts 2-8); wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (counts 9-12); money laundering, in violation of 18 U.S.C. §§ 1957 and 1952

(counts 13-15); and making a false statement to a law enforcement officer, in violation of 18 U.S.C. § 1001 (count 16).

Robertson appeals her convictions on counts 13 through 16 of the superseding indictment. The money laundering offense charged in count 13 arose from a property purchase coordinated by Robertson, in which she made fraudulent representations in documents mailed to the mortgage lender. Following the closing, and in a deal not disclosed to the lender, the property seller wired the buyer, Janis Mann, $24,430 in cash. Five days after the closing, at Robertson's direction, Mann transferred $24,000 of these funds to Robertson via a cashier's check.

Robertson also solicited Mann and her husband to serve as straw buyers for a second real estate transaction involving the use of forged signatures on the purchase agreement, and the submission of false information to the lender regarding the Manns' bank balances and rental income. The property's settlement statement listed a disbursement of $42,684 to Angel's Touch for "[h]ome [i]mprovements." J.A. 288, 352. After the disbursement check was cut, Robertson contacted the title company to have the check voided and the funds divided between herself and Erica Colvin. The title company in turn wired $38,000 to Colvin, which formed the basis for the money laundering offense in count 14.

4

The money laundering offense charged in count 15 arose from a property sale from Angel's Touch to Joseph Garner. The accompanying loan application, mailed to the lender, contained numerous false statements. When the transaction closed, Angel's Touch was to receive a payout of $97,345.96. After closing, at Robertson's direction, the title company instead wired $97,320.96 of the payout to Muhammad Hassan, her sometime-boyfriend.

Robertson was separately charged in count 16 with making a false statement to a law enforcement officer. During an interview with FBI Special Agent Scott Salter, Robertson specifically denied receiving a $24,000 cashier's check from the Manns. Robertson also falsely denied receiving money following the closings on two other properties.

2.

At trial, Robertson moved for a judgment of acquittal on the three money laundering counts, which the district court denied. Robertson elected not to testify and called no witnesses, instead introducing one exhibit through stipulation. After resting her case, Robertson renewed her motion, which the district court again denied. Later that day, the jury convicted Robertson of all charges.

5

Prior to sentencing, Robertson filed a written motion for judgment of acquittal under Fed. R. Crim. P. 29 on counts 13 through 16. The district court denied the motion.

The district court sentenced Robertson to 84 months' imprisonment on each count of conviction, to run concurrently, a sentence below the advisory guideline range of 108-135 months. The court also ordered Robertson to pay $567,094.17 in restitution and imposed a special assessment of $1,600, or $100 for each count of conviction. This appeal followed.

II.

Robertson contends that the government did not present sufficient evidence to support her convictions for money laundering and for making a false statement to a law enforcement officer. With respect to the money laundering convictions, Robertson argues that the government failed to prove that the transfers of proceeds alleged in counts 13 through 15 of the superseding indictment involved "actual profits," as opposed to "gross receipts," of a fraudulent scheme. Robertson argues separately that her conviction for making a false statement fails because the government did not prove the requisite intent.

"The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S.

6

60, 80 (1942), superseded by statute on other grounds, Fed. R. Evid. 104, as recognized in Bourjaily v. United States, 483 U.S. 171, 177 (1987). We "have defined substantial evidence, in the context of a criminal action, as that evidence which a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003) (internal quotations omitted).

With that standard in mind, we turn to Robertson's arguments.

A.

We first consider whether the district court erred in denying Robertson's Rule 29 motion regarding her convictions for money laundering. Relying on the Supreme Court's holding in Santos, Robertson argues that the government failed to prove that the transfer of proceeds alleged in counts 13 through 15 of the superseding indictment involved "actual profits," as opposed to "gross receipts," of a fraudulent scheme.

The government responds that Santos required that the prosecution prove a transfer of "actual profits" only in cases involving a merger issue between the predicate crime and the money laundering offense. Asserting that no merger issue exists here, the government contends that it need only have proven that the money laundered represented the "gross receipts" of criminal

7

activity.  Alternatively, the government responds that even if the "profits" definition is applicable, it presented sufficient evidence at trial to sustain the convictions.

18 U.S.C. § 1957 makes it a crime to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and . . . derived from specified unlawful activity."  18 U.S.C. § 1957(a).  "[C]riminally derived property" is defined as "any property constituting, or derived from, proceeds obtained from a criminal offense."  Id. § 1957(f)(2).

Prior to 2009, the federal money laundering statute did not contain a definition of "proceeds."[2]  Elsewhere in the criminal code, Congress had sometimes defined it to mean "receipts" and sometimes to mean "profits."  See United States v. Santos, 553 U.S. 507, 511-12 (2008) (comparing the definition of "proceeds" in the terrorist material support statute to its definition in the criminal forfeiture statute).

The Supreme Court confronted the ambiguous definition of "proceeds" in Santos.  The defendant there operated an illegal

---

[2] In 2009, Congress added § 1956(c)(9), which defines "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." Because the conduct underlying counts 13 through 15 occurred in 2007, § 1956(c)(9) does not apply to Robertson's case.

lottery, for which he employed runners to gather bets and deliver them to collectors, including co-defendant Diaz. Id. at 509. From this money, Santos would pay both the salaries of his employees and the winners. Id. Santos and Diaz were convicted in state court of operating an illegal gambling business and money laundering. Id. at 509-10. On collateral review, the district court reversed the money laundering convictions based upon its conclusion that "proceeds" meant "profits," and that the government had failed to present evidence that the payments to Santos's employees represented profits of the lottery. Id. at 510. The Seventh Circuit affirmed, and, in a plurality opinion, the Supreme Court did as well.

In his opinion announcing the judgment of the Court, Justice Scalia explained that, if "proceeds" meant "gross receipts,"

> nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery. Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would "merge" with the money-laundering statute.

Id. at 515-16. The plurality found that the meaning of the term "proceeds" was ambiguous and thus invoked the rule of lenity to conclude that "proceeds" should always mean "profits" because

9

that definition is "always more defendant-friendly."  Id. at 513-14.

Justice Stevens wrote separately, concurring only in the judgment.  See id. at 524 (Stevens, J., concurring).  Although Justice Stevens agreed that Congress had not stated a definitive meaning for the term "proceeds," he determined that Congress could have intended to define it differently when applied to different predicate offenses.  Id. at 525.  In the context of an illegal gambling offense, Justice Stevens found that application of the "gross receipts" definition would be "perverse" due to the resulting merger of the money laundering offense and the predicate crime.  Id. at 526-27.  He explained that "[a]llowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy."  Id. at 527.  Therefore, Justice Stevens concluded that "[t]he revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute."  Id. at 528.

We have interpreted Santos in two recent cases.  In United States v. Halstead, the defendant was convicted of mail fraud, healthcare fraud, and money laundering for transfers made to himself and his co-conspirator in an insurance fraud scheme.

10

634 F.3d 270, 273 (4th Cir. 2011). On appeal, the defendant argued that Santos required the government to prove that he had laundered "profits" of his insurance scheme. Id. at 274.

We concluded that the "driving force" behind the holding in Santos was the Court's concern about the "merger problem." Id. at 278. Therefore, we read Santos to stand for the proposition that when a defendant is charged with money laundering and there is a merger problem with the predicate offense, we must determine the proper definition of proceeds "on a case-by-case approach." Id. at 279. Applying this interpretation, we concluded that there was no merger problem in Halstead because the healthcare fraud was "complete" once the insurance companies transferred funds to the defendant's medical corporation. Id. at 280.

We reached a different conclusion in United States v. Cloud, where the defendant was convicted of various offenses stemming from a mortgage fraud conspiracy, including six counts of money laundering. 680 F.3d 396, 399 (4th Cir. 2012). The money laundering charges were based upon kickback payments the defendant made to straw buyers, recruiters, and a mortgage broker for their roles in the scheme. Id. at 400, 405-06. On appeal, we reversed the convictions, concluding that despite the fact that the mortgage fraud was "complete" once the defendant received the funds from the banks, a merger problem existed

11

because the kickbacks constituted payment of the "essential expenses" of operating the fraudulent scheme. Id. at 406 (internal quotations omitted). We distinguished Halstead, explaining that Halstead's transfers of funds to his co-conspirator constituted the two of them "reaping the fruit of their crimes" rather than Halstead "paying the expenses of the fraud." Id. at 406 n.4.

Applying our precedents, the first question in the instant case is whether the money laundering transfers present a merger problem. In making this determination, we focus on the connection between the predicate crime and the transfers on which the money laundering charges are based. Id. at 406-07. If a merger problem exists with respect to any of the counts, the definition of "proceeds" should be narrowed to encompass only "actual profits" when the predicate crime is mortgage fraud. See id. at 409. If there is not a merger problem, the broader "gross receipts" definition applies. See Halstead, 634 F.3d at 279.

B.

We first conclude Robertson's conviction for money laundering on count 13 does not present a merger problem. This transaction, in which Robertson received money from a straw buyer, does not represent a payment of the essential expenses of the mail fraud, but is instead more akin to the transfers

12

between the defendant's personal accounts in Halstead. Id. at 273. Robertson did not pay anyone for their part in the crime, but instead helped herself (via the use of an intermediary) to the proceeds of the fraud, thereby "reaping the fruits" of her crime. See Cloud, 680 F.3d at 407 n.4. Because no merger problem exists as to count 13, the district court properly applied the broader "gross receipts" definition of proceeds.

Nor do we find a merger problem with respect to Robertson's conviction on count 15, which involved a wire transfer of $97,320.96 from the title company to Muhammad Hassan, made at Robertson's direction. The evidence at trial showed that Robertson frequently used Hassan's account for her own purposes, later spending the money to buy items such as furniture and clothes. Again, because Robertson effectively transferred the money to herself, the transaction cannot be deemed a payment for the essential expenses of the predicate mail fraud, and no merger problem exists as to count 15.

We reach a different conclusion as to Robertson's conviction on count 14. The transfer here involved a title company's wire of $38,000 to Erica Colvin, made at Robertson's direction. The record is silent as to Colvin's identity, connection to Robertson, or role (if any) in the fraudulent scheme. On this record, we do not know why the wire transfer was made and therefore are unable to determine whether a merger

13

problem exists. Although we are obliged to make all reasonable inferences in favor of the government, we also must hold the government to its burden of proof on each element of the offense. Absent any evidence to the contrary, we will assume that a potential merger problem exists as to count 14.

We have previously determined that when the predicate crime is mortgage fraud, a merger problem is solved by narrowing the definition of "proceeds" to mean "profits." See id. at 409. As we have already noted, the government presented no evidence explaining the nature and purpose of the title company's wire to Colvin. Accordingly, we find that the government failed to meet its burden to show that Robertson in fact transferred the "profits" of the mortgage fraud scheme to Colvin. We therefore reverse Robertson's conviction for money laundering under count 14.

## C.

We next consider whether the district court erred in denying Robertson's Rule 29 motion with respect to her conviction for making a false statement to a law enforcement officer. Robertson contends that the evidence "failed to exclude the reasonable hypothesis of mistake by [Robertson] when asked to recollect a singular event almost two years earlier" particularly since she displayed no "evasiveness" or "other indicia of lack of candor or forthrightness" during her

14

interview with Agent Salter. Appellant's Br. 30. Robertson also complains that Agent Salter failed to provide her with any documents of the transactions to jog her memory. All of this, Robertson contends, shows that the government failed to prove that she had the requisite mental state to commit the crime. We do not agree.

To convict Robertson of a violation of 18 U.S.C. § 1001, the government was required to prove beyond a reasonable doubt that (1) the defendant knowingly made a false, fictitious, or fraudulent statement or representation; (2) she acted knowingly and willfully; (3) the statement was made in a matter within the jurisdiction of the Federal Bureau of Investigation; and (4) the statement or representation was material. See United States v. Jackson, 608 F.3d 193, 196 (4th Cir. 2010). The jury was entitled to draw all reasonable inferences from the testimony, and we are obliged to sustain the conviction if supported by evidence viewed in the light most favorable to the government. See United States v. Studifin, 240 F.3d 415, 424 (4th Cir. 1998).

We reject Robertson's claim of error. First, although Agent Salter made no effort to jog Robertson's memory of the transactions, Robertson also never professed that she could not remember them. Rather, when asked, Robertson specifically denied receiving a $24,000 check from Mann. Second, Robertson

15

also denied receiving funds following the close of two other property transactions, and the fact that she made multiple false statements makes it less likely that any one of them was the product of a "reasonable mistake." Finally, Agent Salter testified at trial that Robertson never contacted him after the interview to correct her statement.

Viewed in the light most favorable to the government, the evidence is sufficient to support Robertson's conviction for making a false statement to Agent Salter. Accordingly, the district court did not err in denying Robertson's Rule 29 motion with respect to count 16.

D.

We turn finally to the impact of our decision on Robertson's sentence. Robertson was sentenced to 84 months' imprisonment on each count of conviction, to run concurrently. Having set aside Robertson's conviction as to count 14, we affirm the sentence, but direct a limited remand to have the district court strike the $100 special assessment associated with that count.

III.

In sum, we reverse Robertson's conviction for money laundering under count 14 and remand so that the district court

16

may strike the $100 special assessment.  We otherwise affirm the judgment of the district court.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>