**UNITED STATES of America,**

v.

**Kevin ABBOTT, Appellant.**

**No. 08–1623.**

United States Court of Appeals, Third Circuit.

Argued March 3, 2009.

Filed: July 28, 2009.

Mark S. Miller [Argued], Elizabeth F. Abrams, Office of United States Attorney, Philadelphia, PA, Attorneys for Appellee.

Jennifer A.L. Battle [Argued], Joseph Anclien, Elizabeth K. Ainslie, Philadelphia, PA, Attorneys for Appellant.

Before: SCIRICA, Chief Judge, SLOVITER and HARDIMAN, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Kevin Abbott appeals his conviction and sentence following a jury trial. Abbott seeks a new trial, claiming the District Court erred when it denied his motion to suppress evidence and granted the Government's motion *in limine* to admit his prior conviction into evidence. Abbott also claims the District Court erred by imposing consecutive mandatory minimum sentences of fifteen years pursuant to 18 U.S.C. § 924(e) and five years pursuant to 18 U.S.C. § 924(c). For the reasons that follow, we will affirm.

### I.[1]

Acting on a tip that a black male was selling illegal drugs on the 1700 block of Fontain Street, the Philadelphia Police Department arranged for a confidential informant to make controlled purchases of heroin. On September 21 and 22, 2004, the informant approached a man later identified as Michael Grant, who was standing in front of 1739 Fontain Street (the Premises), and offered cash to Grant in exchange for drugs. Grant then entered the Premises and returned with heroin.

Also on September 22, 2004, but before the controlled purchase that day, police obtained a warrant to search the Premises that authorized them to seize drugs, drug paraphernalia, money, and weapons. The warrant also authorized the search of "all persons present who may be concealing narcotics or other illegal contraband." In the affidavit of probable cause, a police officer described the controlled purchase on September 21 in detail and stated that in his experience, "defendants [ ] frequently sell and stash narcotics from inside a location."

Before police executed the warrant, they arranged a third controlled purchase for September 23, 2004. On that day, Grant said he had no heroin, so the informant requested crack cocaine, which Grant re-

---

1. We recount the facts in the light most favorable to the Government, as the verdict winner. *See United States v. Voigt,* 89 F.3d 1050, 1080 (3d Cir.1996).

trieved from an abandoned lot. Shortly after the exchange, police returned to execute the search warrant and they found Grant in front of the Premises. As Grant was being arrested, Appellant Abbott—who was standing in the doorway of the Premises as police approached—slammed the door when officers identified themselves. The police broke down the door, entered the house, and arrested Abbott as he was trying to escape through a kitchen window. At the time of his arrest, Abbott had $617 in cash (including $20 in prerecorded buy money) as well as a key to the front door of the Premises, a small bag of marijuana, and a false driver's license. In addition, ultraviolet light revealed residue from the marked bills on Abbott's hands.

A search of the Premises uncovered drugs, drug paraphernalia, and two handguns. Much of the contraband and tools of the drug trade were in plain view in a front room, including codeine syrup, empty bottles, a scale, and crack cocaine. The handguns were found hidden behind furniture and inside a closet.

## II.

On June 14, 2005, a federal grand jury returned a four-count indictment against Abbott and Grant, charging them with: (1) conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846; (2) possession of more than five grams of cocaine base with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2; (3) possession of a firearm in furtherance of a drug trafficking crime, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1) and (c)(2); and (4) possession of a firearm by a

convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e).

Grant pleaded guilty, but Abbott went to trial. Before the jury was empaneled, Abbott filed a motion to suppress evidence, arguing that the search was illegal because the "all persons" warrant was overbroad. For its part, the Government filed a motion *in limine* to admit Abbott's prior felony conviction into evidence under Federal Rule of Evidence 404(b). The District Court denied Abbott's motion to suppress and granted the Government's motion *in limine*.

At trial, the Government called Grant as a witness against Abbott. Grant testified that he and Abbott sold drugs together for several months, and that he had seen Abbott carry one of the handguns recovered from the house. In addition, the Government called a police officer who had arrested Abbott three years earlier for selling cocaine in front of the Premises as evidence of Abbott's knowledge or intent pursuant to Rule 404(b). The District Court issued a cautionary instruction to the jury before the officer testified in this regard. The jury convicted Abbott of all four charges.

The District Court sentenced Abbott to what it deemed the statutory mandatory minimum: a total of 240 months imprisonment, comprised of 180 months on Count 4 (possession of a firearm by a convicted felon in violation of §§ 922(g) and 924(e)); and 60 months on Count 3 (possession of a firearm in furtherance of a drug trafficking crime in violation of §§ 924(c)(1)(A) and (c)(2)).[2]

Abbott did not dispute that his 180-month sentence on Count 4 was mandated by the Armed Career Criminal Act, 18

---

**2.** Abbott was also sentenced to terms of imprisonment of 120 months for violating 21 U.S.C. § 846 and 120 months for violating 21

U.S.C. § 841(a)(1). Because the District Court ordered these sentences to run concurrently, they are not at issue on appeal.

U.S.C. § 924(e) (ACCA), because he had three previous convictions for "violent felon[ies] or [ ] serious drug offense[s]." § 924(e)(1). The District Court found that Abbott faced an additional 60 months incarceration on Count 3 for possession of a firearm in furtherance of a drug trafficking crime pursuant to § 924(c)(1)(A), which must be imposed *"in addition to* the punishment ... for [the] drug trafficking crime." *Id.* (emphasis added). As the District Court also noted, § 924(c) provides that "no term of imprisonment imposed on a person under [§ 924(c)] shall run concurrently with any other term of imprisonment imposed on the person." § 924(c)(1)(D)(ii).

Despite this language, Abbott objected to his sentence on the basis of § 924(c)'s prefatory clause, which begins: "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law ...." § 924(c)(1)(A). Because ACCA subjected him to a 180–month minimum sentence, *see* § 924(e), Abbott argued that he was exempt from the consecutive minimum sentence imposed by § 924(c). The District Court rejected Abbott's argument, noting that several other courts of appeals have held that "the plain meaning of section 924(c) clearly states that a term of imprisonment imposed under section 924(c) cannot run concurrently with any other term of imprisonment imposed for any other crime, including a sentence under [ACCA]." *United States v. Abbott,* No. 05–333–1, 2008 WL 540737, at *2 n. 8 (E.D.Pa. Feb.27, 2008). Abbott filed this timely appeal and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

### III.

### A.

Although Abbott assigns error to the District Court both at trial and sentencing, we turn first to the sentencing issue because it is the issue of most precedential import as it is the subject of disagreement among courts of appeals.

Several other courts of appeals have interpreted § 924(c) in circumstances similar to Abbott's. *See United States v. Easter,* 553 F.3d 519 (7th Cir.2009); *United States v. Parker,* 549 F.3d 5 (1st Cir. 2008); *United States v. Whitley,* 529 F.3d 150 (2d Cir.2008); *United States v. Collins,* 205 Fed.Appx. 196 (5th Cir.2006); *United States v. Studifin,* 240 F.3d 415 (4th Cir.2001); *United States v. Jolivette,* 257 F.3d 581 (6th Cir.2001); *United States v. Alaniz,* 235 F.3d 386 (8th Cir.2000). For the reasons that follow, we join the majority of these courts in holding that a sentence imposed for a separate offense cannot supplant or abrogate a § 924(c) sentence under the statute's prefatory clause.

As in all cases of statutory interpretation, our inquiry begins with the language of the statute and focuses on Congress' intent. *See United States v. Whited,* 311 F.3d 259, 263–64 (3d Cir. 2002). In this case, we must examine the relevant subsection in its entirety:

(A) *Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—*

   (i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(B) If the firearm possessed by a person convicted of a violation of this subsection—

(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

(ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

(C) In the case of a second or subsequent conviction under this subsection, the person shall—

(i) be sentenced to a term of imprisonment of not less than 25 years; and

(ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

(D) Notwithstanding any other provision of law—

(i) a court shall not place on probation any person convicted of a violation of this subsection; and

(ii) *no term of imprisonment imposed on a person under this subsection shall run concurrently with any* *other term of imprisonment imposed on the person,* including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

§ 924(c)(1) (emphasis added).

The context of § 924(c)(1) reflects significant structural alterations made in 1998, when Congress added the "possesses in furtherance" clause to broaden the statute's reach.[3] The prior version of the statute read:

*Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime,* be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection,

---

**3.** The prior version of § 924(c)(1) merely prohibited *using or carrying* a firearm "during and in relation to" a predicate offense. In *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court held that "using" a firearm meant actively employing it. In response, Congress superseded *Bailey* by amending the statute to prohibit *possession* of a firearm "in furtherance of" a predicate offense. *See Studifin,* 240 F.3d at 420–21; *Alaniz,* 235 F.3d at 386–90 (both discussing legislative history).

*nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.*

§ 924(c)(1) (1996) (emphasis added).

A comparison of the current and prior versions of § 924(c) demonstrates that the statute has consistently specified a minimum additional sentence that must be imposed consecutively to any other term of imprisonment when a "crime of violence or drug trafficking crime" involves a firearm. But what is the scope of the prefatory clause in the current version of § 924(c)(1)(A)? Read in context, the most cogent interpretation is that the prefatory clause refers only to other minimum sentences that may be imposed for violations of § 924(c), not separate offenses. *See Studifin*, 240 F.3d at 423–24 ("Examining the statute as a whole, particularly in light of the language of § 924(c) and the purpose behind the 1998 amendments, we do not believe that Congress intended to narrow § 924(c) by eliminating mandatory consecutive sentences where another provision imposes a higher mandatory minimum sentence for conduct other than that described in § 924(c)."); *Easter*, 553 F.3d at 525–26. The prefatory clause was added in 1998 to reflect the reorganization of the statute, which moved alternative minimum sentences into separate subsections. *See Studifin*, 240 F.3d at 423 ("We agree with the *Alaniz* court that in light of the structure and language of § 924(c)(1), it is clear that the 'except to the extent' language is designed to 'link the remaining prefatory language in (c)(1)(A) to' the other subdivisions.") (quoting *Alaniz*, 235 F.3d at 389). For example, the 1998 amendment made brandishing a weapon during a predicate offense subject to a seven-year minimum sentence under its own subsection, § 924(c)(1)(A)(ii). But if the weapon happens to be a short-barreled rifle, § 924(c)(1)(A)(i) prescribes a ten-year minimum. The prefatory clause simply makes clear that the ten-year minimum applies.

In referring to alternative minimum sentences, the prefatory clause mentions "any other provision of law" to allow for additional § 924(c) sentences that may be codified elsewhere in the future—in the same way, for example, that 18 U.S.C. § 924 prescribes a sentence for violations of 18 U.S.C. § 922. *See* § 924(a)(2) ("Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of [18 U.S.C § 922] shall be fined as provided in this title, imprisoned not more than 10 years, or both."). *See also Collins*, 205 Fed.Appx. at 197–98 ("[This language] provides a safety valve that would preserve the applicability of any other provisions that could impose an even greater minimum consecutive sentence for a violation of § 924(c).") (quoting *Studifin*, 240 F.3d at 423).

Our interpretation is not only consistent with the overwhelming majority of courts that have addressed the question, but more importantly, ameliorates confusion arising from Congress' failure to state explicitly the offenses to which the prefatory clause refers. In *Whitley*, the Second Circuit emphasized this silence in diverging from our sister circuits and holding that the prefatory clause refers to *any* offense. *See Whitley*, 529 F.3d at 158. To test our interpretation of § 924(c), we turn to *Whitley* and other possible interpretations.

B.

Reading the prefatory clause literally and in isolation from its surrounding language, defendants have argued that § 924(c) does not apply when a predicate offense carries a minimum sentence great-

er than the relevant minimum imposed by §§ 924(c)(1)(A)(i)-(iii) or (B)-(C). *See, e.g., Parker,* 549 F.3d at 10–11; *Alaniz,* 235 F.3d at 386. Under this interpretation, a defendant who brandishes a firearm during a drug trafficking offense with a ten-year minimum sentence is not subject to § 924(c) because, even though the elements of the statute are satisfied, the drug crime's ten-year minimum constitutes "a greater minimum sentence" than the seven-year minimum of § 924(c)(1)(A)(ii).

This interpretation is "suspect on its face" for several reasons. *Parker,* 549 F.3d at 11. Initially, the prefatory clause refers to, *inter alia,* greater minimum sentences "provided by this subsection," not for predicate offenses. Second, the minimum sentences specified by § 924(c)(1) apply *"in addition to* the punishment provided for" a predicate offense. Thus, the prefatory clause requires a comparison between the minimum sentences specified in §§ 924(c)(1)(A)(i)-(iii) and (B)-(C), and, at a minimum, others associated with using, carrying, or possessing a firearm—not the predicate offense itself. Third, reading the prefatory clause to refer to the minimum sentence for a predicate offense would narrow the scope of § 924(c) in derogation of Congress' intent to broaden the statute's reach through the 1998 amendment.

That the prefatory clause cannot refer to a predicate offense is borne out by the following hypothetical. Suppose defendant A is convicted of a drug trafficking crime that carries a minimum sentence of seven years imprisonment while defendant B is convicted of a more serious drug trafficking crime that mandates at least ten years imprisonment. Assume also that both defendants are convicted of brandishing a firearm under § 924(c)(1)(A)(ii), which carries a seven-year minimum sentence. Defendant A—who committed the less seri-

ous drug trafficking crime—will spend at least fourteen years in jail (a seven-year minimum sentence for the drug offense followed by at least a seven-year consecutive sentence under § 924(c)). Yet defendant B—*who committed the more serious drug trafficking crime*—would face a mandatory minimum sentence of only ten years. As this hypothetical illustrates, a defendant convicted of a predicate offense with a minimum sentence *one day longer* than the relevant minimum under § 924(c) would escape any further punishment while a defendant whose predicate offense carries *exactly the same* minimum sentence provided by § 924(c) sees his total sentence at least doubled. We are confident that Congress did not intend such a bizarre result. Indeed, every court to consider this argument has rejected it. *See Easter,* 553 F.3d at 525–27; *Parker,* 549 F.3d at 10–12; *Alaniz,* 235 F.3d at 389–90; *Studifin,* 240 F.3d at 420–24; *Jolivette,* 257 F.3d at 586–87; *Collins,* 205 Fed. Appx. at 197–98.

Although it is clear that a sentence imposed for a predicate offense cannot supplant or abrogate the minimum sentence specified for a violation of § 924(c), Abbott's case is complicated by the fact that in addition to drug trafficking and possession of a firearm in furtherance of that offense, he was also convicted of possession of a firearm by a convicted felon under § 922(g) and ACCA. ACCA imposes its own fifteen-year minimum sentence which, for purposes of § 924(c), might be construed as "a greater minimum sentence [ ] otherwise provided by this subsection or by any other provision of law." Therefore, we next consider whether the prefatory clause may refer to sentences imposed under ACCA or another statute.

As the Second Circuit Court noted in adopting such an interpretation, it would be logical for Congress to "provide[ ] a

series of increased minimum sentences [under § 924(c) ] and also to [make] a reasoned judgment that where a defendant is exposed to two minimum sentences ... only the higher minimum should apply." *Whitley,* 529 F.3d at 155. Interpreting the prefatory clause to refer to higher minimum sentences imposed by ACCA or another statute avoids some of the problems cited above. Like the minimum sentences specified in § 924(c), ACCA's minimum may be deemed "in addition to" the sentence imposed for a § 924(c) predicate offense. Moreover, reading the prefatory clause to encompass such sentences would not narrow the scope of predicate offenses eligible for enhanced punishment under § 924(c). As we shall explain, however, this interpretation also leads to highly anomalous results, illustrating why it has been widely rejected.

In this case, as in *Whitley,* the incongruity caused by interpreting the prefatory clause to refer to separate offenses is not readily apparent. The minimum sentence imposed by ACCA happens to be exactly five years more than the sentence Abbott received for his predicate drug offenses, which guarantees that Abbott will serve at least the minimum amount of time beyond his predicate sentences called for by § 924(c)—five years—even without a separate sentence under § 924(c). But what if Abbott had brandished the firearm, which would subject him to a seven-year minimum under § 924(c)? Abbott would face a net minimum sentence of only fifteen years, despite the fact that § 924(c) dictates a minimum of seven years beyond his ten-year drug sentences. Even more incongruously, a defendant situated identi-

cally to Abbott but who was *not* an armed career criminal would be subject to a *harsher* minimum sentence than Abbott—ten years for the drug offense plus at least seven consecutive years under § 924(c). *See Studifin,* 240 F.3d at 423 (noting this anomaly).[4]

In *Whitley,* the Second Circuit was undaunted by these anomalous consequences because district judges have discretion to increase a sentence. 529 F.3d at 158. This view asks too much because it fixes the statute as illogical and anomalous, then posits an *ad hoc* solution in each individual case. Moreover, the purported "solution" was impossible in 1998 when the prefatory clause was written into the statute; Congress could not have intended to create such sentencing disparities with the clairvoyant expectation that seven years later the Supreme Court would, in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), grant district judges the discretion to cure such injustices.

Nevertheless, the Second Circuit justified departing from our sister circuits because, in its mind, the result is dictated by the "plain" language of the statute. *See Whitley,* 529 F.3d at 156 (concluding that other courts have "rewritten the 'except' clause in different ways to escape its plain meaning"). Even if the language of the statute plainly supported this interpretation, we would be loathe to adopt it because "statutory interpretations 'which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.'" *First Merchants Acceptance*

---

4. As a final example, what if Abbott had been sentenced to thirty years for his drug offense? Under the Second Circuit's interpretation, ACCA's fifteen-year minimum would still preempt § 924(c)'s five-year minimum. Abbott would thus escape any additional punish-

ment merely because his predicate sentence far exceeded the alternative minimum provide by ACCA. This would be contrary to Congress' clear intent in § 924(c) to guarantee a minimum amount of additional jail time beyond that served for a predicate offense.

*Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 403 (3d Cir.1999) (*quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). *See also Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—*at least where the disposition required by the text is not absurd*—is to enforce it according to its terms.") (emphasis added and internal quotation omitted).

We emphasize, however, that the language of the statute does *not* plainly support the *Whitley* court's interpretation. Although it is obvious that the prefatory clause has some limiting effect, its language does not plainly suggest that a sentence under § 924(c) may be abrogated or supplanted by a greater minimum sentence that happens to be imposed for an entirely separate offense. According to the prefatory clause, the sentences enumerated in § 924(c)(1)(A)-(C) do not apply when "a greater minimum sentence is otherwise provided" by law. This does not necessarily mean "when a greater minimum sentence *for any other crime* is otherwise provided by law." *See Parker*, 549 F.3d at 11 ("The [prefatory] clause ... does not say 'a greater minimum sentence' for what; yet it has to have some understood referent to be intelligible. Here, the referent could be 'any other crime related to

this case' or 'the underlying drug crime or crime of violence.' Either of those readings ... require reading into the clause a referent not literally expressed."). To the contrary, at least one court has found that the language of the prefatory clause plainly *refutes* the Second Circuit's interpretation. *See Easter*, 553 F.3d at 526 ("In the contest between reading the [prefatory] clause to refer to penalties for the offense in question or to penalties for any offense at all, we believe the former is the most natural.").

Reading the prefatory clause in context as we must, we agree with the majority of courts that the "except" language connotes a comparison between alternative minimum sentences for a violation of § 924(c), not between sentences for separate violations of § 924(c) and another statute.[5]

## C.

In light of the aforementioned problems associated with any other reading of § 924(c)(1)(A), we conclude that the prefatory clause refers only to alternative minimum sentences for violations of § 924(c). Therefore, the District Court did not err by imposing a consecutive five-year sentence.

## IV.

We turn now to the constitutionality of the search warrant. In *Ybarra v. Illinois*,

---

**5.** Nor can the prefatory clause be viewed as authorizing incremental sentencing enhancements. First, such an interpretation is impossible to reconcile with the mandate that § 924(c) sentences must run consecutively to *all* other sentences. *See* § 924(c)(1)(D)(ii). If Congress wanted to establish a net minimum sentence combining predicate offenses and § 924(c) offenses, it would have required § 924(c) sentences to run consecutively to their predicates, rather than all other sentences. Second, there is no basis in the text of § 924(c) to impose incremental minimum

sentences less than those specifically enumerated in §§ 924(c)(1)(A)-(C). The language of the statute makes clear that § 924(c) defines a separate offense with its own minimum sentence, independent of any other offense or its minimum sentence and prohibited from running concurrently. *See Easter*, 553 F.3d at 526 ("[Section] 924(c) does not define an enhancement, it defines a standalone crime, and the penalty imposed under it must be imposed to run consecutively to any other sentence.") (citing *Harris v. United States*, 536 U.S. 545, 553, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002)).

**212**

444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Supreme Court held that police executing a warrant authorizing the search of a bar for narcotics lacked probable cause to search individual patrons within the bar. The Court stated:

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Id.* at 91, 100 S.Ct. 338.

Seizing on this language, Abbott argues that police lacked probable cause to search him because this case is "perfectly analogous to *Ybarra*." However, the search warrant in *Ybarra* referred only to the premises itself and the Court expressly declined to consider a situation like Abbott's, where "the warrant ... authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Id.* at 92 n. 4, 100 S.Ct. 338. Moreover, Abbott was searched in a private residence, not in a public business.

■ Although the Supreme Court has not addressed the issue, this Court has previously intimated that warrants authorizing the search of all persons present may be constitutional in certain circumstances. *See Doe v. Groody,* 361 F.3d 232, 239 (3d Cir.2004) (concluding that if a search warrant was read in light of the officer's request to search "all occupants" of the residence, "then police had legal authority to search anybody that they encountered inside the house when they came to execute the warrant"). Consistent with *Doe* and two of our sister courts of appeals, we now hold that a warrant may authorize the search of all persons present if there is probable cause to believe that a premises is dedicated to criminal activity. *See Owens v. Lott,* 372 F.3d 267, 276 (4th Cir.2004) ("An 'all persons' warrant can pass constitutional muster if the affidavit and information provided to the magistrate supply enough detailed information to establish probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity."); *cf. Marks v. Clarke,* 102 F.3d 1012 (9th Cir.1996) ("An all persons present warrant might be appropriate for a different kind of locale—one dedicated exclusively to criminal activity—for example, a building or apartment used as a crack house, a barn used as a methamphetamine lab, or a warehouse used exclusively as a storage place for arms.").

■ The issue on appeal is not whether the search warrant was facially invalid, but whether it was supported by probable cause with respect to all persons present. *See Owens,* 372 F.3d at 276 ("In our view, the inclusion of 'all persons' language in a warrant presents probable cause issues rather than particularity problems."). Here, the affidavit supporting the search warrant for 1739 Fontain Street described Grant loitering in front of the house, meeting with the informant, taking his money, entering the house, returning with heroin, and giving it to the informant, all under police surveillance. The officer who completed the affidavit stated that in his experience, "defendants [ ] frequently sell and stash narcotics from inside a location." Because this is sufficient to establish probable cause that the house was being used for a criminal enterprise, the search of all persons present inside the house was justified.

Abbott argues that the potential for family or guests to be present negates probable cause with respect to *every* person who could be in the house. *See Marks*, 102 F.3d at 1029 ("[W]e believe that a warrant to search 'all persons present' for evidence of a crime may only be obtained when there is reason to believe that all those present will be participants in the suspected criminal activity. That . . . would not be the case with respect to a raid on any family home where innocent family members or friends might be residing or visiting."); *Owens*, 372 F.3d at 276 ("Th[e] generalization [that subjects present at the scene of an illegal drug distribution commonly have drugs in their possession] was and is undoubtedly true, but it did not provide the kind of particularized information that would have permitted the magistrate to reasonably conclude that there was a fair probability that any person seen by officers on the premises was there to partake in one side of a drug transaction or another."). We disagree.

The cases upon which Abbott relies are factually distinguishable from the present case. *Marks* involved a search for stolen property (electronics equipment) in two residences housing a large extended family with many children, and it was unlikely that the subject of the search would be found on a person. 102 F.3d at 1019–20. By contrast, the search warrant for 1730 Fontain Street was targeted at drugs which could easily be concealed on the person of anyone present as well as in the Premises. *Owens* involved the search of a single-family home based on an informant's unsubstantiated tip that drugs were being sold there, without police surveil-

lance of illegal transactions. 372 F.3d at 271–72. Indeed, *Owens* specifically noted that probable cause to search all persons present might have arisen if "[t]here was [an] indication, for example, that this particular residence had a history of drug-related activities or that known drug dealers or users were frequenting the place." 372 F.3d at 278. That was precisely the case here.

Finally, to the extent that *Marks* and *Owens* may be read to suggest that observing a drug dealer retrieve drugs from inside a private residence does not establish probable cause to obtain a warrant to search those present in that residence, we reject that implication. To hold otherwise would eviscerate the utility of "all persons present" search warrants, allowing drug dealers to ply their wares as Grant and Abbott did here. Drug dealers could set up shop in any house, confident in the knowledge that their contraband is not subject to seizure so long as it is possessed by unidentifiable individuals inside the house.

Because the police had probable cause to search persons inside the Premises, the District Court did not err in denying Abbott's motion to suppress physical evidence found on his person.[6]

## V.

For the foregoing reasons we will affirm the judgment of the District Court.

---

**6.** We also reject Abbott's argument that evidence of his prior arrest for selling drugs at the same location, which the Government offered to show knowledge or intent under Rule 404(b), was unfairly prejudicial. The District Court did not abuse its discretion in determining that the probative value of this testimony outweighed its potential prejudice. *See* Fed.R.Evid. 403; *United States v. Givan*, 320 F.3d 452, 460–61 (3d Cir.2003) (upholding the admission of evidence of prior drug conviction under Rule 404(b)).