NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2599
_____

UNITED STATES OF AMERICA

v.

DANIEL CHARLES,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cr-00526-3)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
June 20, 2011

Before:  HARDIMAN and ALDISERT, *Circuit Judges*
and RESTANI [*] *Judge*.

(Filed:  June 22, 2011)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

-------------------------------------------------

[*]The Honorable Jane A. Restani, Judge of the United States Court of International
Trade, sitting by designation.

Daniel Charles appeals his judgment of conviction after a jury found him guilty of six counts arising from the purchase and subsequent use of a firearm in a commercial robbery. Charles challenges the sufficiency of the evidence as well as the District Court's denial of his motions to sever and to exclude physical evidence. We will affirm.

I

Because we write for the parties, we recount only those facts necessary to our decision. We view the facts in the light most favorable to the Government as the verdict winner. *United States v. Abbott*, 574 F.3d 203, 204 n.1 (3d Cir. 2009).

On January 6, 2006, Tasha Betancourt purchased two Ruger 9mm handguns from a federally licensed firearms dealer in Philadelphia, Pennsylvania and certified in writing that she was the actual purchaser of the guns. Betancourt later testified that she was paid $1,000 to buy the guns for Daniel Charles and Aaron St. Jean.

On January 25, 2006, three men armed with handguns and wearing ski masks robbed the Rite Aid store at 6600 North Broad Street in Philadelphia, where both Charles and St. Jean had been employed. While two robbers stayed near the front of the store, the third robber took the assistant manager, Ernesto Elefante, to the back office and forced him at gunpoint to open and empty two safes. The robber stole approximately $2,300 in cash, including a box containing $500 in rolled quarters. Elefante, who knew Charles from his employment at Rite Aid, testified at trial that the robber was taller than Charles and that he did not recognize the robber's voice.

2

During the robbery, an employee fled the store and alerted two Philadelphia police officers. As the officers approached, they witnessed the two other robbers exiting the store and gave chase. The two robbers were apprehended and identified as St. Jean and another former Rite Aid employee, Walter Carolina, Jr. The officers recovered firearms from both men, and St. Jean's weapon was later identified as one of the Ruger 9mm handguns that Betancourt purchased. The third robber was not apprehended at the scene.

The Rite Aid manager, Michael Anderson, arrived at the scene and identified St. Jean and Carolina. Anderson also advised the officers that he suspected the third robber was Charles because the three men were friendly while working at Rite Aid. In addition, Elefante told police that he had seen Charles and St. Jean together in the store about an hour before the robbery.

The police proceeded to Charles's residence, where they arrested him as he left the building. Police obtained a search warrant for Charles's residence and executed it the next morning. This search yielded a black ski mask, a box of quarters, and the other Ruger 9mm handgun purchased by Betancourt. At trial, Elefante identified the box of quarters as the same one that had been stolen from the Rite Aid. All three items were recovered from a bedroom in the home that also contained a driver's license and other documents belonging to Charles. At trial, Charles's brother testified that he shared the room with Charles, that no one else placed items in their room, and that none of the recovered items belonged to him.

On November 28, 2006, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging Charles, St. Jean, and Carolina with robbery and firearms offenses.[1] Carolina pleaded guilty while Charles and St. Jean went to trial. During jury selection, the District Court severed the trials of Charles and St. Jean, and both were convicted on all counts by separate juries.

Prior to trial, Charles moved to sever the straw purchase, felon-in-possession, and robbery counts. He also moved to exclude evidence of the gun and ammunition recovered from his home from the trial of the robbery counts. Charles argued that there was no direct evidence to link him or the gun recovered from his room to the robbery. He contended that allowing the separate counts to be tried together or admitting evidence of the gun would unfairly prejudice the jury's view of the robbery counts. The District Court agreed with Charles as to the felon-in-possession count, but refused to sever the other counts or to exclude the gun, finding that the offenses arose out of the same pattern of activity and the evidence of the gun was closely related to the robbery offense.

---

[1] Charles was charged with six counts: conspiring to make and making false statements to a federal firearms dealer, in violation of 18 U.S.C. §§ 2, 371, and 924(a)(1)(A) (Counts 1 and 2, the straw purchase offenses); conspiracy to interfere and interference with interstate commerce by robbery, in violation of 18 U.S.C. §§ 2 and 1951(a), and using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1) (Counts 3, 4, and 5, the robbery offenses); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 6, the felon in possession offense). St. Jean was charged with the same counts as Charles, except for the § 922(g) felon in possession charge. Carolina was charged only with the robbery and § 924(c)(1) offenses.

After trial was concluded, Charles timely moved to set aside the jury verdict for insufficient evidence. He argued that a reasonable jury could not find beyond a reasonable doubt that he was guilty of the robbery offenses when no direct evidence showed that he participated in the robbery and Elefante's testimony suggested that Charles was not the third robber. The District Court denied the motion.

## II

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). We exercise plenary review over the joinder of counts under Federal Rule of Criminal Procedure 8(a), *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003), and review the District Court's decision not to sever under Rule 14(a) for abuse of discretion, *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005). We review the District Court's decision to admit or exclude evidence under Federal Rule of Evidence 403 for abuse of discretion, reversing only if the decision was arbitrary or irrational. *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc). Finally, "[i]n reviewing a challenge to the sufficiency of the evidence, we 'must determine whether, viewing the evidence most favorably to the [G]overnment, there is substantial evidence to support the jury's guilty verdict.'" *United States v. Urban*, 404 F.3d 754, 762 (3d Cir. 2005) (quoting *United States v. Idowu*, 157 F.3d 265, 268 (3d Cir. 1998)).

A

Charles argues that the District Court erred in refusing to sever the straw purchase charges from the robbery charges under Federal Rule of Criminal Procedure 14(a) because they were not properly joined in the indictment under Rule 8(a) and because the joinder prejudiced the jury against him. Rule 8(a) allows counts to be joined in a single indictment when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). However, under Rule 14(a), the court may sever properly joined counts for trial if joinder "appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). In determining whether a Rule 14 ruling was an abuse of discretion, "[t]he proper question on appeal is whether the jury could have been reasonably expected to compartmentalize the allegedly prejudicial evidence in light of the quantity and limited admissibility of the evidence." *United States v. De Peri*, 778 F.2d 963, 984 (3d Cir. 1985).

The indictment in this case sufficiently alleged that the straw purchase and robbery charges were "connected with or constitute[d] parts of a common scheme or plan" because it alleged that Charles and St. Jean intended to use the guns purchased by Betancourt to commit the robbery. Given this allegation, the short time period between the straw purchase and the robbery, and the fact that one of the guns was recovered from St. Jean at the robbery, it was not error for these counts to be joined in the same

6

indictment.  *See United States v. Weber*, 437 F.2d 327, 331 (3d Cir. 1970).

The crux of Charles's argument for severance under Rule 14 is that, because the jury heard evidence that he was involved with the straw purchase of a gun used in the crime (St. Jean's gun), the jury ignored the lack of direct evidence tying Charles to the robbery.  Charles has the burden of showing that he was prejudiced by the joint trial, *De Peri*, 778 F.2d at 983, but he provides no evidence as to why the jury would be unable to compartmentalize the evidence as to the separate counts.  Thus, his argument for supposed prejudice amounts to no more than "the same potential for prejudice that every criminal defendant faces when multiple counts are tried together," *i.e.*, insufficient prejudice to warrant severance.  *United States v. Joshua*, 976 F.2d 844, 848 (3d Cir. 1992), *abrogated on other grounds by Stinson v. United States*, 508 U.S. 36 (1993).  Moreover, because the evidence of the straw purchase would be admissible in a trial of the robbery offenses to show Charles's ownership of the handgun and relationship with St. Jean, severing the trials would have had little effect on the information available to the jury.  *See United States v. Eufrasio*, 935 F.2d 553, 571 (3d Cir. 1991) (severance not warranted when evidence would be admissible in both trials).  Accordingly, the District Court did not abuse its discretion by denying Charles's motion to sever.

B

Charles also argues that the District Court erred by denying his motion under Rule 403 of the Federal Rules of Evidence to exclude the Ruger 9mm handgun and

7

ammunition recovered from his home from the trial on the robbery counts. Rule 403 provides that otherwise admissible "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Charles argues that the evidence was not probative of the robbery because there was no direct evidence linking it to the robbery and its prejudicial effect was significant because it allowed the jury to make the "logical leap" that the gun was the one used by Charles in committing the robbery.

Charles understates the probative value and overstates the prejudicial effect of the evidence because his argument rests on the false premise that a jury cannot make logical inferences or base its decision on circumstantial evidence. In actuality, "[a] jury may use circumstantial evidence to support reasonable inferences of facts." *United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008) (citing *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) ("Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred.")). An abundance of such circumstantial evidence—that Charles and St. Jean arranged the straw purchase together, that St. Jean used one of the handguns in the robbery, and that the other handgun was recovered from Charles's room along with a ski mask and proceeds from the robbery—makes the inference that Charles used the handgun recovered from his room in the robbery eminently reasonable. The District Court did not abuse its discretion in

8

refusing to exclude this evidence.

C

Charles argues that the District Court erred by not granting his Rule 29 motion to set aside the jury verdict for insufficient evidence. In ruling on a Rule 29 motion, "[w]e will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Thus, a claim of insufficiency of the evidence places a very heavy burden on an appellant." *Urban*, 404 F.3d at 762-63 (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)) (internal quotation marks omitted). We must be "ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

Although Charles argues that a reasonable jury could not have concluded that he participated in the robbery of the Rite Aid based on the evidence presented, we have little difficulty in finding that it could. Viewed in the light most favorable to the Government, the sum of the evidence—including, *inter alia*, the straw purchase of the handguns, the testimony that Charles and St. Jean were together in the store before the robbery, and the physical evidence recovered from Charles's home—renders reasonable the conclusion that Charles participated in the robbery. The fact that Elefante did not recognize the disguised robber who held him at gunpoint, even though he knew Charles, does not obviate the rationality of that conclusion. Charles presented that argument to the jury, and

9

the jury found it unpersuasive, perhaps concluding that Elefante was mistaken due to fear or confusion. Likewise, we are unpersuaded by Charles's attempt to challenge the physical evidence recovered from his home by arguing that the gun, ski mask, and box of rolled quarters were not conclusively identified as being connected to the robbery. Although the jury was not required to do so, it was permitted to conclude that those items evidenced Charles's participation in the robbery. Because the evidence presented could reasonably support the jury's finding of guilt, it was not error for the District Court to deny Charles's motion to set aside the jury verdict.

III

For the foregoing reasons, we will affirm the District Court's judgment of conviction.

10