**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 10-3080

———————

UNITED STATES OF AMERICA

v.

TAFARI RICHARDSON,

Appellant

———————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-09-cr-00536-001)
District Judge:  Honorable James Knoll Gardner

———————————————

Submitted under Third Circuit LAR 34.1(a)
on April 29, 2011

Before:  SLOVITER, GREENAWAY, JR. and ROTH, Circuit Judges

(Opinion filed: September 28, 2011)

———————

O P I N I O N

———————

**ROTH**, Circuit Judge:

Tafari Richardson appeals from his judgment of conviction for distribution and

possession of cocaine base as well as possession of a firearm in furtherance of a drug-

trafficking crime.[1]  He contends that the drugs and gun seized from his mother's house at the time of his arrest should have been suppressed, because his mother's consent to the search was invalid.  For the reasons that follow, we will affirm the judgment of the District Court.

## I. Background

Around 6:00 a.m. on August 18, 2009, ten law enforcement officers convened at 135 West Green Street, Reading, Pennsylvania, to execute an arrest warrant issued in connection with federal drug charges against Richardson.  The commanding officer at the scene was Bureau of Alcohol, Tobacco and Firearms (ATF) Special Agent Neil Zubaty.  The officers knocked and announced their presence.  After a short wait, they used a battering ram to enter the house.

As the officers entered the residence, they directed several occupants – including Marie Richardson, Tafari's mother – to come down the stairs and sit in the living room.  Two or three of the officers remained in the living room, while another four or five went upstairs to search for Tafari Richardson.

On the second floor, one officer went into Marie Richardson's bedroom.  He seized two bags of marijuana from a drawer in her bed's headboard.  The officer then

---

[1] Richardson also sought to preserve an objection to his sentence for violating 18 U.S.C. § 924(c), pending the Supreme Court's review of *Abbott v. United States*, 574 F.3d 203 (3d Cir. 2009).  The Supreme Court has now affirmed *Abbott*, concluding that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction . . . unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum."  *See Abbott v. United States*, __ U.S. __, 131 S. Ct. 18, 23 (2010).  This avenue of appeal, therefore, remains foreclosed.

went downstairs and asked her if the marijuana belonged to her. She acknowledged it did. She asked the officer whether she was going to be arrested for it. The officer, without responding one way or the other, went outside.

On the third floor, Special Agent Charles Bowman and another officer located Tafari Richardson in a bedroom. They handcuffed him and placed him under arrest. As the officers brought him down the stairs, Agent Zubaty entered the residence. Zubaty informed Richardson that he was under arrest pursuant to a federal warrant. Richardson remained silent.

After Richardson was taken outside, Agents Zubaty and Bowman left the house to lock their assault weapons in their cars. They returned to the house with only their handguns, which were holstered. When Zubaty reentered, he asked Marie Richardson to come into the kitchen. Bowman joined them in the kitchen shortly thereafter.

In the kitchen, Zubaty and Marie Richardson sat together at the kitchen table, as Bowman waited nearby. Zubaty first explained to Marie Richardson the reason for law enforcement's presence. He informed her that he had an arrest warrant for her son and that her son had been arrested and removed from the premises. Zubaty then inquired about Marie Richardson's relationship to the house. She responded that her name was on the lease and that she had lived there for seven or eight years. Zubaty asked her if the officers could look around her son's room. She said, "Yes." Zubaty handed Marie Richardson a consent to search form and explained the form to her. He told her, in substance, that if she did not sign the form seeking consent to search, the officers could not search. Marie Richardson could not see the form clearly because she was not wearing

3

her contacts. Nevertheless, she signed it and did not ask any questions. After the exchange in the kitchen, the officers searched the bedroom in which they had found Tafari Richardson. Near the bed, the officers seized more than 50 grams of crack cocaine and a loaded Glock Model 30 .45 caliber semiautomatic pistol.

Richardson was indicted for distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(A), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). He moved to suppress the evidence seized from his bedroom.

The District Court held a suppression hearing, at which it received testimony from Agents Zubaty and Bowman, as well as from Marie Richardson. At the conclusion of the hearing, the District Court denied in part and granted in part the motion to suppress. Even though the government had not sought to admit any evidence of the marijuana, the District Court found that the agents had illegally searched and seized marijuana from a drawer in Marie Richardson's headboard. The District Court, however, denied the motion to suppress the remaining evidence. The court concluded that Ms. Richardson had voluntarily consented – both verbally and in writing – to the search of Tafari Richardson's bedroom.

On March 4, 2010, Richardson pled guilty to the charges in the indictment. On July 7, 2010, he was sentenced to 190 months imprisonment.[2]

---

[2] Richardson has filed a motion, requesting the removal of his counsel, Mark S. Fisher. One ground which Richardson cites in support of removal is counsel's failure to

4

## II. Discussion

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. §§ 1291 and 3742(a). We review a district court's denial of a motion to suppress under a mixed standard, which requires us to review findings of fact for clear error and exercise plenary review over its legal conclusions. *See United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010). The totality of the circumstances test used to evaluate voluntariness is a question of fact, and thus reviewed for clear error. *See United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003).

Richardson contends that his mother's consent was invalid because – at the time – she had just been sleeping, was taking anti-depressive as well as sleeping medication, was unable to read the consent form without her contact lenses, and feared prosecution in addition to loss of her subsidized housing.

As "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), the requirement of a warrant to perform searches and seizures inside a home "is subject to certain reasonable exceptions." *Kentucky v. King*, __ U.S. __, 131 S. Ct. 1849, 1856 (2011). "'It is . . . well settled that one of the specifically established exceptions . . . is a search that is conducted pursuant to consent.'" *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (quoting

---

seek a reduction of Richardson's sentence under the Fair Sentencing Act (FSA). The FSA was signed into law on August 3, 2010, and applies to defendants sentenced on or after that date. Because Richardson was sentenced on July 7, 2010, he is not eligible for relief under the FSA and his contention is without merit. This motion will be denied, as will Richardson's related motions for withdrawal of the second issue on appeal and for permission to file a supplemental brief.

5

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The Government bears the burden of establishing the voluntariness of the consent to search. *Id.* at 277-78. To determine whether consent was voluntary, courts "examin[e] the totality of the circumstances." *United States v. Stabile*, 633 F.3d 219, 230-31 (3d Cir. 2011); *see also United States v. Crandell*, 554 F.3d 79, 88 (3d Cir. 2009).

We conclude that the District Court properly held that Marie Richardson voluntarily consented to the search of her son's bedroom. Although the District Court noted that Marie Richardson was tired and nervous, it found as a matter fact that "she was coherent and had an understanding of what was happening in connection with the request to search and her son's arrest." In other words, "she was not too affected by her medication to be fully aware of the nature of her right to deny the search . . .." The District Court elaborated that her "actions and demeanor were polite and responsive and cooperative," further supporting her capacity to consent. While recognizing that Marie Richardson was unable to read the consent form without her contact lenses and was not informed of the full extent of her constitutional rights, the District Court nevertheless found that "she understood that the officers needed her consent to search or else they could not search." *See Price*, 558 F.3d at 279. Finally, the District Court noted that the agents, in seeking consent, did not mention the marijuana seized from her bedroom, and, as a result, she did not feel "overwhelmed [or] coerced" by that fact.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

6